United States District Court
Southern District of Texas
**ENTERED**
March 18, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff/Respondent, | § § § | |
| v. | § § | CRIMINAL NO. 2:14-653 CIVIL NO. 2:17-192 |
| RODOLFO CASARES, Defendant/Movant. | § § § | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant Rodolfo Casares filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and memorandum of law in support (D.E. 97), to which the United States of America (the "Government") responded (D.E. 116) and Movant replied (D.E. 118).[1] For the reasons stated herein, Movant's § 2255 motion is **DENIED**.

## I. BACKGROUND

On September 10, 2014, Movant was charged with conspiracy to possess with intent to distribute more than one kilogram of heroin, more than 500 grams of methamphetamine, and more than five kilograms of cocaine (Count One); possession with intent to distribute 1.96 kilograms of methamphetamine (Count Two); and possession with intent to distribute 2.98 kilograms of cocaine (Count Three).

During a three-day trial that commenced on January 20, 2015, the jury heard from several individuals connecting Movant to the multi-year drug trafficking conspiracy charged in Count One. Relevant to Movant's claims under § 2255, the jury heard that

---

1. Docket entries refer to the criminal case.

1

federal agents seized approximately 2.27 kilograms of methamphetamine and 3.45 kilograms of cocaine from three people traveling in a Toyota RAV4 at the Hebbronville, Texas Border Patrol checkpoint on August 20, 2011. Two of the three occupants testified against Movant, including Luis Serrano Aguirre. Aguirre testified that he and the other occupants travelled to Nuevo Laredo, Mexico, at Movant's direction; strapped bundles of cocaine and methamphetamine to their bodies; walked back into the United States; picked up the RAV4; and proceeded to the checkpoint, where they were arrested. He further testified that he had previously transported drugs for Movant before August 2011. Border crossing records showed that Movant used the same RAV4 to cross into the United States two months prior.

The jury convicted Movant on all three counts. The Probation Office calculated Movant's advisory guideline range at life in prison. The Court sentenced Movant to 300 months' imprisonment as to each of Counts One and Two and 120 months as to Count Three, to be served concurrently and to be followed by 5 years' supervised release.

Movant appealed to the Fifth Circuit, which affirmed his judgment and conviction on June 20, 2016. Movant filed the instant motion under 28 U.S.C. § 2255 on May 28, 2017. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant's § 2255 motion asserts that trial counsel was ineffective because:

    A. He failed to advise Movant concerning a "15-year plea offer made by the Government";

    B. He "opened the door" at trial to the admission of prejudicial evidence regarding Movant's involvement with the Zetas cartel;

2

C. He failed to file a "specific performance motion" concerning the Government's breach of a non-prosecution agreement; and

D. He failed to investigate and file other pretrial motions.

Movant's trial counsel, David Klein, filed an affidavit responding to these allegations. Movant further claims:

E. Appellate counsel was ineffective because he failed to argue on appeal that Movant was denied the right to his chosen counsel at trial.

F. The Government violated his Fifth Amendment right to due process when it breached its agreement not to prosecute him.

## III. LEGAL STANDARDS

### A. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466

3

U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). An appellate counsel's

performance is reviewed under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394; *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996). Nor will counsel be deficient for failing to press a frivolous point. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394.

## IV. ANALYSIS

### A. Trial counsel's failure to advise Movant concerning a plea offer

Movant first claims that trial counsel was ineffective for failing to advise him of a "15-year plea offer made by the government." D.E. 97-1, p. 3. In support of this claim, Movant offers a copy of an unsigned Memorandum of Plea Agreement he found in his case file after he was convicted. Movant states that Attorney Klein never informed him of this plea offer, nor did he explain the benefits of accepting the offer, the likelihood of conviction versus acquittal at trial, or the sentencing exposure Movant faced in the event of conviction. Movant claims that, had he been aware of this written plea agreement, he would have pled guilty in exchange for a 15-year sentence.

Attorney Klein's sworn affidavit is clear: "There was never a '15 year' offer made by the United States." Klein Aff., D.E. 117, p. 1. The plea agreement offered by Movant similarly did not promise a 15-year sentence, but instead stated that, in exchange for pleading guilty to Count Two and providing truthful testimony to the Court and truthful statements to the probation officer, the Government would dismiss the remaining counts,

5

recommend credit for acceptance of responsibility, and request a sentence *within the applicable guideline range*. D.E. 97-2, Ex. C ¶ 2. Should Movant provide substantial assistance, the Government would recommend a sentence reduction commensurate with the value, completeness, and truthfulness of the information provided. *Id.* ¶ 3. However, the plea agreement explicitly stated: "The United States does not make any promise or representation concerning what sentence the defendant will receive." *Id.* ¶ 8; *see also id.* ¶ 5 ("Neither the Government nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court.").

Movant further acknowledges that he discussed a plea agreement with defense counsel but decided to reject it. Movant admits that his "counsel relayed the plea," and "[i]n response" to the offer, Movant "told counsel to ask if the government would offer (10) ten years in light of his cooperation." D.E. 97-1, p. 5. According to Movant, after he asked defense counsel for a lower sentence, counsel said that he would not ask the government "because it was a stupid request in this case". *Id.* Attorney Klein essentially corroborates this version of events in his affidavit: "In one of my earliest conversations with Mr. Casares, I conveyed the offer made by [Assistant United States Attorney] Chad Cowan and the offer was rejected. We discussed this offer many times during my representation of Mr. Casares." Klein Aff., p. 1. Attorney Klein has also provided emails between himself and AUSA Cowan confirming that he had discussed a plea agreement with Movant. D.E. 117, Ex. A. When Attorney Klein relayed to AUSA Cowan that Movant wanted more than one third off his sentence for debriefing, AUSA Cowan

responded that he "could not make any guarantees up front." *Id.* Movant ultimately rejected the offer and decided not to plead guilty.

The record shows that the Government never made a "15-year plea offer" to Movant, and the offer the Government did make was relayed to him by Attorney Klein. There is nothing to support Movant's claim that trial counsel was ineffective for failing to properly counsel him regarding a 15-year plea offer by the Government. Accordingly, this claim is denied.

### B. Trial counsel's opening the door at trial to prejudicial evidence

Movant next claims that counsel rendered ineffective assistance at trial when he "opened the door" to evidence concerning Movant's involvement with the Zetas during his cross-examination of Luis Serrano Aguirre, after counsel had previously filed a successful motion in limine to exclude any testimony that Movant was a "Zeta hitman or affiliated at all with the Zeta Drug Cartel" without the Court's prior approval.

During his cross-examination of Aguirre, trial counsel asked Aguirre if he knew who supplied the Toyota RAV4 he was driving when he was arrested in August 2011. 1/21/2015 Trial Tr., D.E. 89 at 18:16. "Zetas in Mexico, sir," Aguirre responded. *Id.* at 18:17. Defense counsel moved for a mistrial on the grounds that Aguirre's mention of the Zetas violated the motion in limine, explaining that he expected a different answer based on prior testimony. *Id.* at 21:17-25. The Court denied the motion and ruled that Aguirre's inconsistent testimony about the source of the RAV4 was relevant to his credibility and allowed him to testify about the Zetas connection. *Id.* at 22:12-19. It is this testimony about which Movant complains.

7

As an initial matter, defense counsel did not "open the door" to testimony concerning the Zetas. The jury first heard about Movant's involvement with the Zetas during AUSA Cowan's direct examination of Aguirre, when Aguirre testified that he and others crossed vehicles between the United States and Mexico "so they could help the cartel, the Zetas." 1/21/2015 Trial Tr. at 10:22-24. Thus, Movant's claim that the jury would never have heard about his connection to the Zetas if not for defense counsel "opening the door" is belied by the record.

Movant is also unable to show prejudice. On appeal, Movant's counsel argued that: (1) testimony that Movant bought weapons and cars and paid people on behalf of the Zetas was inadmissible extrinsic evidence, and (2) the district court erred in admitting cross-examination testimony that the Zetas had supplied the vehicle used in the subject drug conspiracy. *United States v. Casares*, 654 F. App'x 199, 200 (5th Cir. 2016). The Fifth Circuit found that, in light of the "overwhelming circumstantial evidence presented at trial, any error in the admission of the complained-of testimony did not substantially affect the verdict." *Id.* at 201. Accordingly, this claim is denied.

### C. Trial counsel's failure to file a "specific performance motion"

Movant next claims that trial counsel was ineffective for failing to file "the correct pre-trial motions," namely a "specific performance motion" challenging "the Government's breach of its contract with Mr. Casares not to prosecute." D.E. 97-1, p. 26. According to Movant, the Government entered into "both a verbal agreement and a proffer agreement through its agents not to prosecute [Movant] federally if he agreed to assist the government." *Id.* Movant claims that trial counsel should have filed a motion

8

compelling the Government to "stand by their contract" after "he held up his end of the bargain and the government did not." *Id.*

"Nonprosecution agreements, like plea bargains, are contractual in nature, and are therefore interpreted in accordance with general principles of contract law." *United States v. Castaneda*, 162 F.3d 832, 835 (5th Cir. 1998). Movant bears the burden of proving "that such an agreement existed" and "the agreement's essential terms." *United States v. Jimenez*, 256 F.3d 330, 347 & n.23 (5th Cir. 2001).

Movant has submitted a written Proffer Agreement dated June 12, 2013, between himself and the U.S. Attorney's Office for the Southern District of Texas. D.E. 97-2, Ex. F. However, this proffer merely provided that "no statements made or other information provided by [Movant] during the proffer will be used directly against [him] in any criminal case, including sentencing." *Id.* It did not preclude the Government from prosecuting him. *Id.* Movant further claims he was orally "informed that he was giving a federal proffer, and would not be prosecuted federally if he assisted by providing truthful and valuable information related to federal drug offenses." D.E. 97-1, p. 28. However, he does not specify with whom he entered into this alleged agreement. He also contradicts himself by stating that there was an agreement with the federal government that he would not be prosecuted, but on the other hand claiming that he would have pled guilty in exchange for a 15-year sentence.

The record shows the only non-prosecution agreement that existed was between Movant and the Cameron County, Texas District Attorney's (DA) Office. At sentencing, Nikki Arias, a former Cameron County employee and DEA Task Force Officer, testified

that she debriefed with Movant twice in 2013 while he was under indictment for aggravated robbery. 6/12/2015 Sent. Tr., D.E. 91 at 19:15-23, 24:20–25:3. There was an ADA present for the debriefings, but no AUSA. *Id.* at 20:18-24, 25:4-5. Following the debriefings, Movant received "credit" from the Cameron County DA's Office, which dismissed his pending state aggravated robbery charges. *Id.* at 25:7–26:23. At sentencing in this federal case, AUSA Cowan stated that the only benefit Movant received for his debriefings was dismissal of the state charges, and that the Government opposed his attempt to get federal credit for his debriefings: "Mr. Casaras was facing a serious charge in Cameron County and Mr. Klein and the Court are more familiar with the state system than I am, but he received dismissal of the charges for those debriefs, so he's already received credit and is basically asking this Court now that—especially double dipping—so I'd ask the Court to keep that in mind." *Id.* at 28:21–29:2.

"The filing of pretrial motions falls squarely within the ambit of trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1983). Because a motion for specific performance would have been meritless in this case, counsel was not ineffective for failing to file such a motion. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."). Accordingly, this claim is denied.

In a related claim, Movant alleges the Government violated his Fifth Amendment right to due process when it breached its agreement not to prosecute him. Because no such agreement existed, Movant's due process claim is denied.

### D. Trial counsel's failure to investigate and file appropriate pretrial motions

Movant's final claim concerning trial counsel is for "constructive denial of effective assistance of counsel as a result of counsel's numerous failures throughout the case." D.E. 97-1, p. 33. The majority of these claims are repetitive of those addressed *supra*—that defense counsel should have filed a motion for specific performance concerning the supposed non-prosecution agreement, failed to inform Movant of the plea agreement, "opened the door" to testimony concerning Movant's involvement with the Zetas, and failed to assist Movant in retaining the counsel of his choice.

In addition, Movant complains that defense counsel failed to investigate the alleged non-prosecution proffer or otherwise attempt to contact law enforcement agents involved in the debriefings. The record belies this claim. Emails show that Attorney Klein specifically asked AUSA Cowan for "a copy of the proffer agreement [Movant] entered in the Valley and any reports of that debrief." D.E. 117, Ex. A. p. 7. Klein also informed AUSA Cowan that he had been trying to contact Agent Nikki Arais concerning any debriefings. *Id.* Finally, Klein arranged for Agent Arias to testify at sentencing. Movant's claim that trial counsel was ineffective for failing to investigate Movant's debriefing efforts and the proffer agreement is therefore denied.

### E. Appellate counsel's failure to raise a meritorious claim on appeal

Movant raises a single ineffective assistance claim regarding appellate counsel: he failed to raise the issue that Movant was denied his right to his chosen counsel at trial. According to Movant, during his final pretrial conference held on January 15, 2015, he

informed the Court that his family was going to retain private attorney Gabriel Salais due to numerous concerns he had regarding his appointed counsel, Attorney Klein. However, Movant was placed in the Special Housing Unit that night and was unable to contact his family or Attorney Salais. As a result, Movant was forced to proceed to trial the following week with "an attorney he had very little communication with, and no confidence in." D.E. 97-1, p. 15.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." However, the Supreme Court has recognized that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *see also United States v. Sarfraz*, 683 F. App'x 268, 2017 WL 1134732, at *1 (5th Cir. Mar. 24, 2017).

The Court also did nothing to deny Movant the counsel of his choice. After granting three defense motions to continue the trial date, the Court scheduled the final pretrial conference at 9:00 A.M. on January 15, 2015, with the trial to begin on January 20, 2015. At that conference, Attorney Klein informed the Court that Movant told him that morning that "his family is looking to hire a lawyer." 1/15/2015 Hrg. Tr., D.E. 114 at 3:13-15. Klein said that he had received a call from Attorney Salais stating that Movant's family had contacted him, but Salais said he would not represent Movant. *Id.* at 4:3-11. The AUSA reminded the Court that the Government was holding six cooperating defendants in custody and a material witness on bond. *Id.* at 4:19-23. The AUSA further

acknowledged that Movant had the right to hire an attorney, but contended that "this is just a delay tactic on his part" and an effort "to gain [sic] the system." *Id.* at 6:8-9.

After this discussion, the Court instructed Attorney Klein to notify the Court before 5:00 P.M. the next day if Movant or his family hired a new attorney; otherwise, trial would begin on January 20, 2015. *Id.* at 8:13-15. The Court reasoned:

> Monday is a holiday and if the jury needs to be here on Tuesday morning, I'm not going to have them show up if there's no trial. They come from quite a distance and it's not fair to them or the Court or anyone else or the Government.
>
> It's kind of late in the game, sir. You're absolutely entitled, you have a right to retain your own attorney if you choose to do so, and I'm not trying to interfere with that in any way. But the timing is what's a problem and this case needs to go. It's been reset several times. When you all were here last, the last continuance I granted, because you were set for trial actually this week, the Government made it clear there's several witnesses being held to testify in this case and here we are Thursday, late in the week, I'm just now being informed that this might be an issue. This case has been pending for a while.

*Id.* at 8:12–9:5.

Neither Movant nor his family retained substitute counsel before the Court's deadline. Movant never asked the Court for additional time, nor did he complain that he still wanted a different attorney. Instead, trial proceeded as planned on January 20, 2015, with no objection from Movant.

The Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citing *Wheat v. United States*, 486 U.S. 153,

13

163–64 (1988); *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)). Here, the Court was well within that latitude when it required Movant—who already had more than four months to retain counsel—to do so the following day given the circumstances of this case. The Court was also willing to continue the trial if Movant was able to obtain substitute counsel. However, Movant's counsel of choice, Attorney Salais, was unable and/or unwilling to represent Movant, through no fault of the Court.

Because Movant's claim that he was denied choice of counsel would have been meritless, appellate counsel did not render ineffective assistance when he failed to raise it on appeal. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim"). This claim is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits,

14

"[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 97) is **DENIED**. Movant is further **DENIED** a Certificate of Appealability.

ORDERED 3/18/19.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE